```
              IN THE UNITED STATES DISTRICT COURT
                 WESTERN DISTRICT OF ARKANSAS
                      FAYETTEVILLE DIVISION
```

**MARTIN GILZOW**                                                **PLAINTIFF**


     **v.**               **Case No. 05-5091**

**LENDERS TITLE COMPANY, an Arkansas
Corporation, and MICHAEL PRYOR,
Individually and as President and
Chief Executive Officer of Lenders
Title Company**                                                  **DEFENDANT**

## O R D E R

    Now on this 29th day of September, 2005, come on for consideration the following motions:

    \*    **Defendant Pryor's Motion For Protective Order And Stay Of Discovery** (document #6);

    \*    **Motion To Dismiss Michael Pryor** (document #8); and

    \*    the parties' **Joint Motion For Protective Order** (document #10),

and from said motions, and the responses thereto, the Court finds and orders as follows:

    1.    Plaintiff Martin Gilzow ("Gilzow") alleges that he was terminated from his employment with Lenders Title Company ("Lenders") because he assisted and participated in reporting allegations of sexual harassment in a Lenders' branch office. He alleges that defendants violated the Arkansas Civil Rights

Act (the "ACRA"), specifically **A.C.A. §16-123-108**, dealing with retaliation. He also makes several other allegations against Lenders only, which are not relevant to the pending motions and will therefore not be discussed.

2. Separate defendant Michael Pryor ("Pryor") now moves for a stay of discovery and for dismissal of the claim against him for failure to state a claim upon which relief can be granted, pursuant to **F.R.C.P. 12(b)(6)**. Pryor recognizes that a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief," **Krentz v. Robertson Fire Protection District, 228 F.3d 897 (8th Cir. 2000),** but asserts that the claim against him falls within this narrow parameter.

3. The Court will first address the Motion To Dismiss, as it is potentially dispositive of all the issues presented by the pending motions.

(a) Pryor first argues that no retaliation claim "exists, whether against a supervisor, employer, or otherwise, under §108 of the statute." The Court rejects this argument out of hand, since it is contrary to the clear language of **A.C.A. §16-123-108**, which provides, in relevant part, as follows:

> (a) RETALIATION. No person shall discriminate against any individual because such individual in good faith has opposed any act or practice made

> unlawful by this subchapter or because such
> individual in good faith made a charge, testified,
> assisted, or participated in any manner in an
> investigation, proceeding, or hearing under this
> subchapter.
>
> * * *
>
> (b) REMEDIES AND PROCEDURES. The remedies and
> procedures available in §16-123-107(b) shall be
> available to aggrieved persons for violations of
> subsections (a) and (b) of this section.

The subchapter referred to, which is the ACRA, recognizes as a civil right the right to "be free from discrimination because of . . . . gender." **A.C.A. §16-23-107(a)**.

From the foregoing the Court finds that the Arkansas legislature created a cause of action for retaliation for assisting or participating in a charge of gender discrimination, and assigned it a set of remedies. The Court rejects the notion that because **§16-123-107(b)** describes remedies available for non-employment-related types discrimination -- whereas **§16-123-107(c)** describes remedies for employment-related types of discrimination -- **§16-123-108** is rendered nugatory in employment relationships, which are, after all, those in which the majority of retaliation claims arise. Indeed, the Arkansas Court of Appeals has held that **§16-123-107(b)** *is* applicable, and **§16-123-107(c)** i*s not* applicable, in such a case. **Odom Antennas, Inc. v. Stevens, 61 Ark. App. 182, 966 S.W.2d 279 (1998)**.

(b) Pryor next argues that, even if the ACRA does provide a cause of action for employment-related retaliation,

it cannot be asserted against an individual supervisor, but only against an "employer."

As Pryor points out, Arkansas looks to federal law for guidance in interpreting its civil rights statutes. See, e.g., **Flentje v. First National Bank of Wynne**, **340 Ark. 563, 11 S.W.3d 531 (2000)**. He reasons that because supervisors cannot be held liable under Title VII in their individual capacities, a supervisor cannot be held liable on a claim of retaliation under Arkansas law.

Gilzow counters that the state and federal acts are so different in remedial structure that the federal act cannot provide guidance in interpreting the state act; that the ACRA does not "expressly preclude individual liability"; and that "individual liability would be consistent with the breadth and purpose of the Act."

In the Court's view, neither party has suggested the appropriate analysis for this issue. Federal law need not be called upon to resolve a question of statutory interpretation where the statute itself is clear. In this case, the ACRA directs that "no person" shall discriminate by retaliation. **A.C.A. §16-123-108(a)**. While there might be debates over whether an organization is a person for purposes of a particular statute, there should be no such debate over whether a person is a person for those purposes.

In addition, while the ACRA does not define "person," it

does define "employer," as "a person who employs nine (9) or more employees in the State of Arkansas in each of twenty (20) or more calendar weeks in the current or preceding calendar year, *or any agent of such person*." **A.C.A. §16-123-102** (emphasis added). If, as alleged, Pryor is the President and Chief Executive Office of Lenders, he qualifies as an employer under the ACRA and would come within the ambit of the ACRA's provisions regarding employer-related conduct.

For these reasons, the Court concludes that Pryor can be subjected to individual liability for retaliation under the ACRA if the facts support that claim. The Motion to Dismiss will, therefore, be denied.

4. Turning to the Motion For Protective Order And Stay Of Discovery, it is apparent from what is said in ¶3 that discovery should not be stayed, nor should any blanket protective order be entered to prevent discovery from being taken of Pryor. That being said, however, the Court finds that a narrower class of discovery requests made of Pryor is premature.

Pryor states that certain discovery requests seek his individual income tax returns, insurance policies, bonus incentive plans, and financial statements. It appears to the Court that these documents are sought in order to support an award of punitive damages, should that issue be presented to the jury in this case. The Arkansas Supreme Court has said,

albeit in *dicta*, that "[a] claim for punitive damages is a serious matter; private tax records and personal financial data should not be made readily available unless clearly relevant." **Curtis v. Partain, 272 Ark. 400, 614 S.W.2d 671 (1981), overruled on other grounds, Lupo v. Linebarger, 313 Ark. 315, 855 S.W.2d 293 (1993).** Because this case arises entirely under Arkansas law, and because the Arkansas Supreme Court did not retreat from this *dicta* when it overruled **Curtis**, the Court believes it appropriate to take its cautionary language into consideration. The motion will, therefore, be granted to the extent it seeks private tax records, insurance policies, and personal financial records of Pryor, subject to reconsideration if a showing can be made that those documents bear on the issues of liability raised in this case.

 5. Finally, the parties have filed a Joint Motion For Protective Order, seeking an order that various documents obtained in discovery will be kept confidential by the parties. While the Court does not disagree that this type of confidentiality is a salutary thing during discovery, there appears to be no dispute between the parties about it, and therefore nothing for the Court to decide. While the parties may choose to enter a stipulation regarding the confidentiality of discovery materials, the Court declines to use the powers of **F.R.C.P. 26(c)** to resolve a non-dispute, and

this motion will be denied as moot.

**IT IS THEREFORE ORDERED** that **Defendant Pryor's Motion For Protective Order And Stay Of Discovery** (document #6) is **granted in part and denied in part**.

The motion is **granted** insofar as it seeks to protect Pryor from having to produce or disclose his private tax records, insurance policies, and personal financial records, subject to reconsideration if a showing can be made that those documents bear on the liability issues raised in this case.

The motion is **denied** in all other respects.

**IT IS FURTHER ORDERED** that the **Motion To Dismiss Michael Pryor** (document #8) is **denied**.

**IT IS FURTHER ORDERED** that the parties' **Joint Motion For Protective Order** (document #10) is **denied**.

**IT IS SO ORDERED.**

                                            **/s/ Jimm Larry Hendren**
                                            **JIMM LARRY HENDREN**
                                            **UNITED STATES DISTRICT JUDGE**