IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**MARTIN GILZOW**                                               PLAINTIFF

    v.                Case No. 05-5091

**LENDERS TITLE COMPANY, an Arkansas
Corporation**                                                  DEFENDANT

## O R D E R

Now on this 3rd day of March, 2006, comes on for consideration **Plaintiff's Motion For Partial Summary Judgment** (document #25) and defendant's **Motion For Summary Judgment** (document #26), and from said motions, the responses thereto, and the supporting documentation, the Court finds and orders as follows:

    1.    Plaintiff claims that he was subjected to retaliation for reporting allegations of sexual harassment, in violation of the Arkansas Civil Rights Act ("ACRA"); that defendant failed to pay him overtime compensation as required by the Fair Labor Standards Act ("FSLA"); and that defendant wrongfully denied him various benefits under the Employee Retirement Income Security Act ("ERISA") by erroneously classifying him as an independent contractor rather than an employee.

    Defendant denied these allegations, and both parties now move for summary judgment, each opposing the motion of the other.

2. Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States**, **31 F.3d 696 (8th Cir. 1994)**. Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp.**, **45 F.3d 262 (8th Cir. 1995)**. The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op**, **838 F.2d 268 (8th Cir. 1988)**.

3. Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, the following significant undisputed facts are made to appear:

* Plaintiff Martin Gilzow has specialized education and experience in the field of computers, and has worked since about 1980 in the computer field.
* In 1986, Gilzow began operating a company called Martin's Computer Repair, which later changed its

name to Martin's Computer Services.  From 1994 to
2002, Martin's Computer Services provided computer
services to defendant Lenders Title Company
("Lenders") on an "as needed" basis.

* Lenders has its corporate offices in Little Rock,
  Arkansas, and maintains branch offices in thirteen
  other locations, including Rogers, Arkansas.  Its
  Chief Executive Officer, Mike Pryor; Chief Operating
  Officer, Teana Bradford; and Director of Human
  Resources, Kevin Robinson, are officed in Little
  Rock.

* While operating as Martin's Computer Repair and
  Martin's Computer Services, Gilzow did not work set
  hours for Lender, but would come into Lenders'
  facilities to work on weekends.

* On several occasions before 2002, Pryor and Bradford
  tried to hire Gilzow as a Lenders employee to take
  care of their computer needs.  Pryor and Gilzow
  discussed the benefits that would be available to
  Gilzow as an employee of Lenders, but Gilzow had
  similar benefits available to him without becoming
  an employee, and he declined to become an employee.

* Sometime before February, 2002, Pryor and Gilzow
  discussed the computer projects that Lenders would
  need to have done in the coming year, and agreed

that Lenders would pay Gilzow $67,000 per year beginning in February, 2002. This agreement was not reduced to writing.

* After this agreement was reached, Gilzow was to perform his services on the same basis as he had before.

* At the same time, Lenders hired, as employees, two people who had formerly been employees of Martin's Computer Services, Jenny Fletcher and Steve Hubbard.

* While Lenders and Gilzow offer dramatically different descriptions of Gilzow's job responsibilities after February, 2002 - Lenders making Gilzow sound like a key member of the management team and Gilzow describing himself as basically a maintenance/repair person - there is no dispute that Gilzow's job was exclusively computer-oriented, and did not include any title work.

* Gilzow used his own vehicle in traveling between the various Lenders locations. Initially, he was not reimbursed for his travel expenses, instead taking deductions for those expenses on his 2002 and 2003 federal income tax returns. At some point, Gilzow started submitting expense reports to Lenders, which reimbursed him for his expenses incurred on Lenders' behalf.

* Gilzow made more than $455 per week, and was paid twice a month. His check was always in the amount of $2,791.67, regardless of the number of hours he had worked.
* Lenders reported its payments to Gilzow on 1099-MISC tax forms (as "nonemployee compensation"), rather than on W-2 tax forms, and Gilzow was responsible for payment of his own income taxes.
* Lenders did not provide Gilzow with health insurance, disability insurance, or access to a 401(k) account, which were benefits it made available to its employees.
* After February, 2002 - the time period is not specified - Bradford and Robinson had "internal discussions" to the effect that Lenders needed to talk about Gilzow being an employee rather than an independent contractor.
* In the spring of 2004, Gilzow conveyed to Bradford certain complaints of employees in Lenders' Rogers branch office, regarding Lynden Polk, manager of that office, and Sharon Tyra, an employee. Bradford conveyed that information to Pryor. The details of the information conveyed are disputed, Gilzow asserting that the complaints had to do with sexual harassment in the Rogers office and Lenders

asserting that they had only to do with Tyra getting easier job assignments than co-workers.

* Gilzow subsequently told Pryor that he thought something should be done about the concerns that he (Gilzow) had brought to Pryor's attention concerning the Rogers office. Pryor responded that the details of any investigation he made about the matter could not be discussed with Gilzow because of privacy concerns.

* Gilzow and Polk had had a long-running dispute for years, and did not seem to like each other.

* On May 5, 2004, Pryor and Gilzow met in Little Rock, and the situation in the Rogers office came up for discussion. Pryor told Gilzow that management would handle the matter, and that Gilzow should stay out of it. Gilzow insisted that Bradford be made a part of their discussion, but Pryor refuse to include Bradford. In spite of this, Gilzow went to Bradford's office in an attempt to bring her into the discussion.

* In going from Pryor's office to Bradford's office, Gilzow had to pass through an open area of the corporate offices, where other employees work. At the time, the two men were talking loudly to each other as they continued their dispute.

* Gilzow was subsequently terminated.
* Gilzow applied for, and received, unemployment benefits from the Arkansas Employment Security Division, which determined that Lenders had incorrectly classified him as an independent contractor.
* Lenders' employee handbook states that "[n]on-exempt employees may be either Salaried or Hourly, but are entitled to overtime pay at a rate of one and one half times their normal hourly rate of pay for any hours actually worked over 40 during a work week."

4. The central issue raised by both pending motions is whether there is a genuine issue of material fact as to Gilzow's status when he was performing work for Lenders: was he an employee or an independent contractor? If Gilzow was an employee, he was entitled to overtime for hours worked over 40 per week and to ERISA benefits, and he is in that class of persons with standing to sue for retaliation for reporting employment discrimination. If he was an independent contractor, his claims cannot survive.

5. The determination of employee/independent contractor status, under all three theories of recovery, is a fact intensive inquiry, although the relevant facts are not precisely the same as to each theory of recovery.

(a) For purposes of the ACRA claim, the relevant factors

to consider are those listed in **Blankenship v. Overholt, 301 Ark. 476, 786 S.W.2d 814 (1990).** Couched in the factual setting of the case at bar, those factors are as follows:

* the extent of control which, by agreement, Lenders could exercise over the details of Gilzow's work;
* whether or not Gilzow was engaged in an occupation or business distinct from that of Lenders;
* whether the type of work done by Gilzow is usually done under the direction of an employer or by a specialist without supervision;
* the level of skill required for Gilzow's work;
* whether Gilzow or Lenders supplied the instrumentalities, tools, and place of work;
* the length of time Gilzow worked for Lenders;
* whether Gilzow was paid on the basis of a unit of time or a unit of work;
* whether Gilzow's work was part of Lenders' regular business;
* whether the parties believed they were creating the relationship of employee independent contractor; and
* whether Lenders was "in business."

Of these, the extent of control is "the principal factor in determining the relationship." This factor was elucidated by this quotation in **Blankenship**:

> where the contractor is to produce a certain result, according to specific and definite contractual

>           directions, agreed upon and made a part of the
>      contract, and the duty of the contractor is to
>      produce the net result by means and methods of his
>      own choice, and the owner is not concerned with the
>      physical conduct of either the contractor or his
>      employees, then the contract does not create the
>      relation of master and servant. This court has
>      consistently accepted and stated the settled rule
>      that even though control and direction be retained
>      by the owner, the relation of master and servant is
>      not thereby created unless such control and
>      direction relate to the physical conduct of the
>      contractor in the performance of the work with
>      respect to the details thereof.

**301 Ark. at 479-80.**

(b) The standard is virtually the same in an ERISA case. See **Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318 (1992),** quoting with approval from **Community for Creative Non-Violence v. Reid, 490 U.S. 730 (1989):**

> "In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party."

(c) In an FLSA claim, a more inclusive standard governs. The FLSA defines "employee" as "any individual employed by an employer," **29 U.S.C. §203(e),** and includes in the meaning of

"employ" the concept "to suffer or permit to work," **29 U.S.C. §203(g)**. Finding this a more sweeping approach than that taken by other social legislation, the Supreme Court determined that it was appropriate to apply an "economic realities" test to the evaluation of whether an individual was an employee or an independent contractor. **Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28 (1961).**

The "economic realities" test is somewhat of a hybrid test, applying particularly relevant factors from the common law and Restatement tests of agency, but in a less technical and more "economically realistic" manner. As in the ACRA and ERISA evaluations, the totality of the circumstances controls, and the question is a fact-sensitive one.

For example, the Tenth Circuit said, in **Baker v. Flint Engineering & Construction Co., 137 F.3d 1436 (10th Cir. 1998),** that

> [i]n applying the economic reality test, courts generally look at (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.

In Tenth Circuit analysis, the focus is on whether the individual is "economically dependent on the business to which he renders service" or is, "as a matter of economic fact, in business for himself." **Henderson v. Inter-Chem Coal Co.,**

**Inc.**, **41 F.3d 567 (10th Cir. 1994)**. To the same effect, cf. **Robicheaux . Radcliff Material, Inc.**, **697 F.2d 662 (5th Cir. 1983)**.

    6. As can be seen from the stipulated facts, the parties were not in agreement on many of the factors relevant to the employee/independent contractor question. They did not agree on the level of control that could be exercised by Lenders over Gilzow's work, the level of control Gilzow had over when and how many hours he devoted to the job, the level of skill it required, or even who furnished the instrumentalities of the work. They certainly did not agree on the degree to which Gilzow was "economically dependent" on Lenders, as opposed to being, "as a matter of economic fact, in business for himself." The Court finds, therefore, that it would be inappropriate to grant summary judgment on the employee/independent contractor issue to either party.

    7. An ancillary argument made by Lenders is its contention that, even if Gilzow is found to have been its employee, it has no liability under the FLSA because Gilzow was exempt from coverage under that Act. In response, Gilzow points out that exempt status under the FLSA is an affirmative defense, citing **Fife v. Harmon**, **171 F.3d 1173 (8th Cir. 1999)**, and that Lenders failed to plead it as such. Gilzow contends that defendant has, therefore, waived the defense. Failure to plead an affirmative defense "results in a waiver of that

defense and its exclusion from the case." **Sayre v. Musicland Group, Inc.**, 850 F.2d 350 (8th Cir. 1988).

Lenders argues that it fairly raised the affirmative defense of the exemptions, even though it did not specifically so plead. It points out that Gilzow pled non-exempt status in his Complaint, and that it denied that allegation. It then cites a line of cases which it believes supports the notion that such generalized pleading is sufficient to raise affirmative defenses.

The Court has examined both the pleadings in this case, and the cases cited by Lenders, and is not persuaded that, under the particular circumstances of this case, Lenders' position is justified.

(a) The line of cases on which Lenders relies began with **Rochholz v. Farrar**, 547 F.2d 63 (8th Cir. 1976), which dropped the following *dicta* into footnote 3:

> Appellants assert as a third contention of error that the District Court improperly permitted an advisory jury to consider the affirmative defense of the negligence of the applicants. The point was not argued and is without merit. The burden of proving fraud by appellees required a showing of reasonable reliance by appellants; thus their negligence was not an affirmative defense required to be pleaded, see Fed.R.Civ.P. 8(c), but was in issue from the inception of the complaint.

The United District Court for the District of Kansas picked this up and transformed it into the proposition Lenders now asserts, that "[m]atters which are in issue from the complaint's inception need not be pleaded as affirmative

defenses . . . as such matters will not take the plaintiff by surprise if later raised by the defendant." **Federal Deposit Insurance Corp. v. Renda, 692 F.Supp. 128 (D.Kan.1988)**.

The District Court for the Southern District of West Virginia looked to both **Rochholz** and **Renda** for guidance, but hewed more closely to the spirit of **Rochholz** when it found, upon a review of defenses in **Clark v. Milam, 152 F.R.D. 66 (S.D.W.Va.1993)** that

> the defenses do not set forth avoidances or affirmative defenses within the meaning of Rule 8(c), Fed.R.Civ.P., but are instead mere denials of liability and assertions that Plaintiff cannot establish a *prima facie* case. As such, the matters they raise are already in issue by virtue of the allegations of Plaintiff's Complaint.

The Court believes that the middle ground espoused in yet another footnoted *dictum* is the proper approach to the issue:

> When an affirmative defense "is raised in the trial court in a manner that does not result in unfair surprise, . . . technical failure to comply with Rule 8(c) is not fatal." Compugraphic explicitly informed Financial Timing on two occasions that it would seek to dismiss the action on the grounds that all claims were barred by the one-year contractual period of limitations: first, in Compugraphic's response to Financial Timing's first set of interrogatories served on November 12, 1987; and second, in Compugraphic's memorandum in support of its motion for summary judgment on September 15, 1988. These notices were sufficient to avoid unfair surprise.

**Financial Timing Publications, Inc. v. Compugraphic Corp., 893 F.2d 936 (8th Cir. 1990)**(internal citation omitted).

(b) Turning to the circumstances in the case at bar, the

Court finds that the allegation in Gilzow's Complaint to which Lenders refers is as follows:

> 12. Plaintiff was an employee of Lenders between February 2000 and his termination on or about May 7, 2004. He was employed under the terms of successive one-year contracts of employment. Plaintiff was not exempt from the overtime compensation requirements of the Fair Labor Standards Act, 29 U.S.C. §201, et seq.

Lenders' response to this allegation is as follows:

> 12. Defendants admit that the business relationship between Defendant Lenders Title and Plaintiff was terminated on or about May 7, 2004. Defendants deny each and every other allegation contained in Paragraph 12 of Plaintiff's Complaint.

Throughout its Answer, Lenders was careful to refer to the "business relationship" between it and Gilzow, and to make it clear that it did not consider its relationship with Gilzow to be that of employer/employee. It did not, however, make clear that it was pleading that *if Gilzow were an employee*, he was an exempt employee.

The Amended Answer likewise relies heavily on the phrase "business relationship" and is of the overall tenor that there was no employer/employee relationship whatsoever between Lenders and Gilzow.

During discovery, Gilzow consistently took the position that he had been an employee of Lenders, and Lenders just as consistently took the position that Gilzow had been an independent contractor. Thus the battle lines were drawn on the specific issue of whether Gilzow was an employee or an

independent contractor, not whether he was an exempt or a non-exempt employee.  It was not until Lenders filed its Motion For Summary Judgment on January 13, 2006, that it asserted the alternate ground that "[e]ven if Gilzow was an employee, he was exempt from the overtime requirements of the FLSA pursuant to the Computer Professional Exemption, the Administrative Exemption and/or the Executive Exemption."

The foregoing scenario, in the Court's opinion, resulted in unfair surprise to Gilzow when he first learned, at the summary judgment stage, after discovery had closed and shortly before trial, that Lenders was going to assert that he was an exempt employee.  Exempt versus non-exempt status is not an element of Gilzow's prima facie case, and the position that he is an exempt employee is totally at odds with Lenders' consistent position throughout preparation of the case that Gilzow was not an employee at all.  It also is a defense, the development of which would require an in-depth inquiry into the specifics of Gilzow's job, both as experienced by Gilzow and as perceived by management.  This inquiry apparently did not take place during discovery; certainly, based on the submissions on the pending motions, Lenders' description of Gilzow's job differs radically from Gilzow's description of that job.  It appears to the Court that the facts pertinent to this highly fact-specific inquiry are relatively undeveloped.  The Court, therefore, believes that Gilzow would be unfairly

prejudiced by having to meet this defense at this point.

8. Lenders also claims it is entitled to summary judgment on the ERISA claim because that claim is barred by the applicable statute of limitations. Gilzow responds that the running of the statute of limitations is an affirmative defense, **F.R.C.P. 8(c),** and that Lenders did not plead it. The Court agrees that Lenders has waived this defense.

9. Lenders also contends that Gilzow cannot establish a prima facie case that he was subjected to retaliation for reporting protected activity, in violation of the ACRA. That statute provides, in relevant part, as follows:

> No person shall discriminate against any individual because such individual in good faith has opposed any act or practice made unlawful by this subchapter or because such individual in good faith made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter. . . .
>
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . any right granted or protected by this subchapter.

**A.C.A. §16-123-108.**

One of the rights granted and protected by the Act is the right to obtain and hold employment without discrimination on the basis of gender. **A.C.A. §16-123-107(a).**

Lenders contends that Gilzow cannot show that he engaged in protected activity, because all he complained of was that Polk, the Rogers Branch Manager, showed favoritism towards Tyra, one of the employees in the Rogers office. Gilzow,

however, offers evidence of the following:

* that he told Human Resources Director Robinson that Polk was "harassing the girls" in the Rogers office, and that Robinson thought favoritism could constitute harassment, depending on the circumstances;

* that he reported pornography on Polk's computer to Bradford and also discussed it with Pryor;

* that Deborah Reel, another employee in the Rogers office, told Bradford that Polk and Tyra had an "improper relationship" and "fought like husband and wife" and that Polk showed favoritism toward Tyra;

* that the previous year, another female employee had complained of Polk's treatment of her; and

* that none of these complaints was investigated.

The foregoing, if given its strongest inferences favorable to Gilzow's ACRA claim, are sufficient to establish a genuine issue of material fact as to whether Gilzow reported discrimination based on gender to Lenders' management.

Lenders also contends that Gilzow cannot show that his termination was causally related to whatever he said about Polk. This argument is based on Lenders' position that Pryor was the person who terminated Gilzow and that Pryor did not know of the complaints, only Bradford did. Gilzow counters this with evidence that in response to an Interrogatory, Lenders identified both Pryor and Bradford as people who took

part in the decision to terminate Gilzow.

Gilzow also shows, and indeed it is not denied, that his termination stemmed directly from a discussion he had with Pryor about the situation in the Rogers office. While the nature of that discussion is disputed, when the Court affords Gilzow the favorable inferences to which he is entitled at this stage of the case, it finds that summary judgment is not appropriate as to Gilzow's ACRA claim.

**IT IS THEREFORE ORDERED** that **Plaintiff's Motion For Partial Summary Judgment** (document #25) is **denied**.

**IT IS FURTHER ORDERED** that defendant's **Motion For Summary Judgment** (document #26) is **denied**.

**IT IS SO ORDERED.**

          /s/ Jimm Larry Hendren
          **JIMM LARRY HENDREN**
          **UNITED STATES DISTRICT JUDGE**